NEW-YORK,
May, 1805.

Bunn & Dick-
ins on
v.
Morris & Wis-
ner.

## John Bunn and Benjamin Dickinson, Assignees of Smith Valentine, a Bankrupt, *against* Robert Morris and Gabriel Wisner.

If several
persons unite
in an adven-
ture the profit
and loss of

ASSUMPSIT for money had and received, the first count laying it to the use of the bankrupt before his bankruptcy ; the second, to that of his assignees. From the evidence disclosed at the trial, the following appeared to be the circumstances of the case.

*Valentine*, the bankrupt, being owner of one third of the sloop *Nancy*, agreed with the firm of *Jackson* & *Perkins*, who were traders owning another third, to load the vessel for the *West-Indies*; he to furnish one half of her cargo, and they the other; either party to make up any deficiency that might arise on his, or their side; the whole, however, to be sold in the *West-Indies*, and the proceeds invested in a return cargo. But, except in this transaction, *Valentine* was totally unconnected in business with the partnership of *Jackson* & *Perkins*, who constituted a house distinct from him; and even in the present association, though they were to share in profit and loss, yet it was to be only in proportion to the lading they respectively put on board. The vessel having sailed on her voyage, *Jackson* & *Perkins*, previous to her return, in consideration of 5000 dollars, expressed to have been paid, but when in fact not one had ever passed, assigned the whole of her return cargo to *Abraham Varick*, and the defendant *Wisner* " to be applied to take up all notes drawn by *Jackson* & *Perkins* in " favor of, and indorsed by *Bennet* & *Brower*, so far as they might " legally be so applied and no further." At the time of this assignment, which was totally unknown to *Valentine*, the assignees, *Varick* & *Wisner* were perfectly acquainted with the interest of *Valentine*, to whom no communication of the transaction was made, and on the arrival of the sloop, before which period *Valentine* had stopped payment, some difficulty about the division of her cargo being apprehended, the whole was put, with the consent of all parties, into the hands of the defendants to sell on commission, upon an express undertaking by them to pay separately to each house, its respective proportion of the net proceeds. Subsequent to this, the house of *Jackson* & *Perkins* became insolvent, and *Jackson* being examined, swore that *Valentine* had, after placing the property with *Morris* & *Wisner*, agreed that his share should, in the first place, be disposed of in satisfaction of such balance as might be due from him to *Jackson* & *Perkins* on account of the shipment and taking up of certain bills then unpaid, but indorsed by them for *Valentine*, in consequence of which, they had taken up notes to the amount of 1884 dollars 94 cents. Every word of this was flatly denied by *Valentine*, who deposed, that he always declared to *Jackson* & *Perkins*, that the whole of his interest, in the cargo of the *Nancy*, should go to his general creditors, and that he forbade paying any of his notes, as both he and *Perkins* & *Jackson* were insolvent.

On this testimony the counsel for the defendants insisted the

*[margin note:]* which is to be shared and borne according to their respective proportions. and the whole be received by a third person under an express promise to pay the share of each, according to the several interests, he can not set up any equities which one may have against the other, or object that they were partners, but must pay according to his promise.

plaintiffs ought to be non-suited. 1st, Because *Jackson* & *Perkins* were so interested with *Valentine* in the cargo of the *Nancy* as partners, or otherwise, as to be enabled to make a legal transfer of the whole cargo. 2d, That the assignees, standing in the place of *Smith Valentine*, could recover no more from the defendants, than *Valentine* could have done from *Jackson* & *Perkins*, and as to trigh a balance was due, there consequently could not be a recovery.

The judge having overruled the last position, reserved the first for the opinion of the court, and then, leaving the credibility of the witnesses to the jurors, charged for the plaintiffs, in favor of whom the jury found.

Application was now made to set aside this verdict, and grant a new trial for a variety of reasons. The decision of the court, however, was confined to the second only, which was, that allowing *Valentine* and the house of *Jackson* & *Perkins* to be tenants in common of the cargo, and therefore, as between them no action would lie, yet the promise of the defendants to account separately to each, rendered them liable, independent of the nature of the tenancy.

*Hopkins* for the plaintiffs. It is immaterial how many persons were interested in the property in question, or of what nature their interests were; the express promise of the defendants was to pay according to the several rights, and therefore, became a separate engagement to each, for his proportion.

*Riker* and *Wilkins*, contra. The benefit of this promise is claimed by assignees, and therefore subject to all the equities which could be urged against their bankrupt. The defendants are entitled under *Jackson* & *Perkins*; whatever, therefore, they might claim against *Valentine*, *Morris* and *Wisner* may, against his assignees.

*Hopkins* was told it was unnecessary to reply.

*Per curiam*, delivered by SPENCER J. It was left to the jury to decide on the accuracy and credibility of these witnesses, and it seems that they believed *Valentine*. The only question, therefore is, whether the assignment made by *Jackson* and *Perkins*, can, under the circumstances of this case, defeat the plaintiffs' recovery.

From the manner in which the case is presented to the court, it is to be intended, that the defendants have sold the cargo, are possessed of the money, and that no difficulty exists of ascertaining the respective interests of the parties. It will not be necessary to decide, whether *Jackson* and *Perkins*, and *Valentine* were partners with respect to the cargo. If they were not, there could not exist.

a shadow of doubt, and if they were partners, the objection does not lie in the defendants' mouths. They have no concern with the partnership; their undertaking was to pay each house, separately, the net proceeds of the property. As respects the defendants, it was a several and distinct undertaking. The case is too clear for argument. The opinion of the court is, that the plaintiffs are entitled to judgment on the verdict.